and the court's chief of staff, Joshua Forse, on behalf of Sheriff Susan Hudson, I'm joined at council table by David Marcello, Curtis Case, and John Williams, who is the sheriff's chief of staff. In 1996, Congress enacted the Prison Litigation Reform Act, or the PLRA, in part, arguably in large part, to limit the authority of federal courts in fashioning relief in cases challenging prison conditions, and to stop or prevent federal courts from micromanaging state correctional institutions. This appeal concerns two of those limitations. First, under the PLRA, federal courts may not order the construction of a jail to provide prospective relief with respect to jail conditions. Second, the parties may, among themselves, agree and enter into an agreement to build a jail to obviate existing constitutional violations, but federal courts may not enforce the party's agreement. In other words, federal courts may not directly or indirectly direct the parties to build a jail to resolve the issues in litigation like this particular case. Is that what happened in this case, or did the parties come to that agreement on their own? Your Honor, it's our position that the district court held initially that the parties came to that agreement on their own, and because they came to that agreement on their own, while they have the right to do that, the authority to do that under the PLRA, the district court does not have the authority to enter orders enforcing the party's agreement. And that's what happened here. The court entered a number of orders in 2019 that purported to direct the parties to construct a Phase III jail. If I understand what you're saying, the reason the district court doesn't have that authority is that it's prohibited under the Act, despite the fact that the parties may have agreed? That's right, Your Honor. There are two different sections of the PLRA that are particularly . . . three, actually, that are at issue here. Under subsection A, 3626A, the district courts have a certain amount of authority to enter perspective relief to resolve prison litigation reform, prison reform litigation. There are certain findings that the court has to make because, as I said before, Congress's intent in enacting the PLRA was to limit the equitable authority that district courts have. One of the prohibitions in section A is that the courts may not order the construction of a jail. They may also not order the raising of taxes to resolve these kinds of disputes. If the order that the court . . . if the court doesn't itself enter that order and there is an agreement to build a jail in response to this type of litigation and the types of claims that the plaintiffs have brought here, then it falls under subsection C of the Act, 3626C. And 3626C governs different types of settlement agreements. Now, the courts have held that those are mutually exclusive. There are consent decrees and there are private settlement agreements. 3626C2 expressly states that the parties may go beyond the authority of the district court under subsection A in fashioning relief voluntarily to respond to the conditions in the jails and the arguments that are made by the plaintiffs in these kinds of cases with respect to those prison conditions. But the statute provides that the courts may not enforce that agreement. The only remedies that are available is either returning the parties to their condition before the voluntary agreement was entered into, or because it's a private agreement among the parties, and if one party is accused of breaching that agreement, then the parties claiming the breach may sue for breach of contract in state court. And subsection 3626C2B recognizes and reserves to the parties the remedy of a state court action. So it's not that the parties can't enter into the agreement, that they can do that. But the court lacks the authority to enforce that agreement. And that's the problem in this case. The federal court lacks the authority, but a state court would have the authority to decide the breach of contract. That's right, Your Honor, because the dispute would be an issue governed by state law subject to resolution by a state court. And so if the parties enter into a private agreement, if one party is alleged to have breached that agreement, then those claiming the breach may sue to enforce the agreement under state law and state court. That's not what happened here. Originally, in this case, when the city filed its Rule 60B motion that was subject of a prior appeal, the court held expressly that, quote, it had never ordered the city to build a jail, close quote. The district court, in adopting the magistrate's report and recommendation, characterized the party's agreement as a binding contract, as a binding agreement, and said that it was, quote, simply ordering the city to effectuate a plan it had voluntarily and contractually bound itself to undertake, close quote. What's different from any other settlement agreement that happens in federal court? I mean, there is a difference between those settlement agreements that happen outside of the court and those that are brought to the court to, in this case, ask the court to bless it or what have you. I think, Your Honor, the issue here is, is the original obligation subject to the party's agreement? The party's agreement was brought up in 2019. Didn't the previous panel of this court say that we did not have jurisdiction to visit the 2019 order? The previous panel said that it did not have jurisdiction to consider those orders. It didn't say that there was no jurisdiction under the right case to consider those orders. The issue in . . . Why isn't the appeal of those 2019 orders time-bound? Because there are interlocutory orders of the court that arguably were not subject to appeal at the time. The court entered orders that, depending on how you read the order, either sought to enforce the party's agreement to build phase three or, as the court has said more recently, to enforce its prior orders. This court, in the Fraser case, held quite clearly that orders that merely enforce an injunction are not subject to appeal. So, there was an assumption, there is an assumption, I think, made by the appellees, that any argument with respect to the 2019 orders was waived, but they assumed that those orders were appealable. And arguably, they were not. Regardless, under the PLRA, there's a right to move to terminate orders, and that right exists whether the earlier orders were appealed or not appealed. If, for example, you take a different case, but a situation where the parties have entered into a consent decree, the court has entered that, there's a right to move after two years to terminate that consent decree. Whether the parties originally appealed . . . . . . isn't there . . . shouldn't you have to . . . don't you have to show that there was some change in either . . . in some circumstances or law or fact or what have you? What basis are you willing to move to terminate? For Rule 60b motion, there's a requirement of proving changed circumstances. And the Court of Appeals initially affirmed the district court's denial of the Rule 60b motion, finding that there was no abuse of discretion with respect to whether there were any changed conditions or not. The . . . Stated otherwise, why doesn't Anderson 1 control us here and bar your arguments that you're making now? Because Anderson 1 addressed a different issue. All the court decided in Anderson 1 was whether or not the district court had properly denied the city's Rule 60b motion. And that was in the notice of appeal, right? In that case? I believe so, Your Honor. Obviously, the city brought that appeal. The sheriff did not. But that's all that that case addressed. And this court was very clear that its only basis of jurisdiction was the appeal from the Rule 60b motion. And therefore, the court could only consider whether or not the district court abused discretion in finding that there had been no change in facts or law justifying a modification or termination of those orders. In Anderson 1, the court specifically said, we lack jurisdiction to review the substance of the January and March 2019 orders from which the city's motion seeks relief. That's right, Your Honor. But the court lacked jurisdiction because the only basis for appeal was the Rule 60b motion. And the court noted that among the three alleged changed circumstances the city cited in support of its Rule 60b motion, the violation of the PLRA through the issuance of an order to build a jail was not one of them. So the court just said that the existence of the PLRA, whatever the terms of the PLRA are, have not changed from the time that those orders were entered until the time the motion was brought. The court also noted that it had no separate jurisdiction to consider the substance of the orders and whether or not they violated the PLRA. This case does present the court with an opportunity to address whether those orders violate the PLRA. We did not bring this motion under Rule 60b. It's not a rehash of what the city did. It's a different procedure, and it's making a different argument, and that is that the district court, having denied the city's motion on the ground that it did not order the parties to build a jail, that it was merely enforcing their voluntary agreement, the court's 2019 orders violated a separate section of the PLRA. The PLRA defines a private settlement agreement, which is an agreement among the parties, as... Assuming we don't, and I'm not forecasting anything, but assuming we don't buy the argument that this is a private settlement agreement, why doesn't Rule 25 also bar these claims, since Sheriff Hudson would step into the shoes of Sheriff Hudson? Our argument is not that orders of the court don't bind the sheriff. You don't need to reach that issue, with all due respect, to hold in favor of the sheriff. If it turns out that the district court did enter an order directing the parties to build the Phase 3 jail, then that order directly violates Rule 3626a1c of the PLRA. The PLRA could not be any clearer in stating that among the limits on federal courts in prison condition litigation is a prohibition against orders directing local officials to build a jail to solve the jail problems. 3626a1c states expressly, nothing in this section shall be construed to authorize the courts in exercising their remedial powers to order the construction of prisons or the raising of taxes or to repeal or detract from the otherwise affable limitations on the remedial powers of the courts. That that provision reflects Congress's intent to limit the equitable authority of federal courts in PLRA lawsuits, and it recognizes the broad administrative and discretionary authority of prison officials in managing local prison institutions. In many of these cases, it might be easy, or at least easier, to try to solve a problem, whether it's an overcrowding problem or a lack of medical care problem, by either ordering the parties to build a new jail to relieve the overcrowding or ordering the local officials to raise taxes to provide more money that can be directed towards care at the prisons. But the PLRA directly prohibits those kinds of actions on the part of the court. The problem in this case is we have one of those orders. Initially, the district court said that it had not entered an order directing the parties to build a jail, most likely because of 3626A1C. But when we pointed out that the court also did not have the authority to enforce the parties' agreement, then the court came up with a hybrid approach that suggests that it's a court order based upon the consent and acquiescence of the parties, and therefore the court has the right to hold the parties to their agreement. But that's not right under the PLRA, because the consent and acquiescence of the parties as the basis for an order is the definition of a consent decree under the PLRA. And that definition also says that a consent decree does not include private settlement agreements. And the courts have held that those two types of settlements are mutually exclusive. It's one or the other. The definition, the distinction, the critical distinction between private settlement agreements and consent decrees, as the Eleventh Circuit held in Roe v. Jones, is this idea of judicial enforcement. No one questions that a court has the authority to enter orders enforcing its own orders, whether by way of contempt or otherwise. But only the parties have the right to enforce their own private agreements. The court cannot do that. And if the parties choose to do that, then their remedy is to go to state court and attempt to enforce the agreement under state law. Our argument is that this agreement is not enforceable under state law, but, frankly, that's an issue that should be resolved by a different court at a different time. Thank you, Your Honor. May it please the Court. Elizabeth Hecker for the United States. Although I'm glad to answer any of the Court's questions today, I will be focusing on the jurisdictional issue, including the point that a motion to terminate is not a proper vehicle for the sheriff's arguments and that the sheriff is bound by her predecessor's actions. Attorneys for the plaintiff class will be discussing judicial estoppel and responding to the sheriff's argument that the consent order was a private settlement agreement. Does the PLRA authorize, after a certain period of time, a motion to terminate? Yes, Your Honor. It does. The argument is that it is based on whether or not the relief that has been ordered remains necessary to correct a current and ongoing violation and is still the most... That would go to the merits, not to... That's correct, Your Honor. I will say that we have not found one case in this circuit, in any other circuit, or in any district court, where a court has granted a motion to terminate based on a legal argument that could have been made in a direct appeal of those orders. So this would be a very first. Every single court decision in this circuit has been based on a motion to terminate that has been made under the proper purpose, that things are different now and the relief ordered is no longer necessary to correct a current and ongoing violation. We're talking about... It may be a very narrow procedural point, but it may be important here. Whether or not a motion to terminate had merit in the district court, the very different question is whether the denial of that motion to terminate is appealable to this court such that we have jurisdiction today. Your Honor, it is certainly without question that the court has jurisdiction over a motion to terminate, just as the court has jurisdiction over denial of a 6TB, but it has to be a proper motion to terminate. It has to serve the purposes of a motion to terminate. That goes to the merits. I don't mean to be arguing with you, but I'm trying to, of course, to plumb this distinction. That goes to the merits of what we might decide about the motion to terminate, but not about whether we have jurisdiction to decide that question. Certainly, Your Honor, and I understand your point is taken. I think that we are here validly. This court has jurisdiction to decide what it is deciding today. But I will raise again the point that the district court properly granted the motion to terminate, and one of the grounds that it granted it was that the parties had not even argued that any violation had been cured and did not offer any sort of alternative that was more narrow or less intrusive. And that is what a motion to terminate is for. And I will just make the point, Your Honor, that just as it was not a proper vehicle two years ago, a motion to terminate is not a proper vehicle for the sheriff's PLRA argument today. As the district court... I'm sorry, Your Honor? In connection with that, in what ways are we bound by our ruling in Anderson 1? Certainly, Your Honor. The court specifically said that it had no jurisdiction over the substance of the 2019 orders, the January and March 2019 orders, because they were not appealed. It did not say we don't have jurisdiction. It said there were kind of two reasons why it didn't have jurisdiction. Number one was that Rule 60B was not a proper vehicle, and number two, because the orders were not appealed. The court said that multiple times. Your Honor, this is the first time sitting here today that I have ever heard the sheriff or even the city claim that it did not believe that the 2019 orders could not be appealed. Certainly they could have been appealed in 2019 at the time they were issued. And the last panel of this court specifically recognized they could have been appealed. That was one of the grounds that they decide to not exercise jurisdiction, because they could have been appealed in 2019 when they were ordered. And the district court specifically said this was yet another thinly veiled attempt to end run the original decision not to appeal those specific orders. The time for appealing is jurisdictional, as Your Honors very well know. This was five years ago now, and these orders have never been appealed. They were not appealed at the time. This, just like the 60B motion, is an attempt to collaterally attack those orders. And the time to do so has simply run out. There must be finality in litigation. And these repeated attempts to raise a legal argument that could have been raised on direct appeal is simply no longer available to the sheriff at this moment. Does that mean, if you're right about that, does that mean that either this sheriff or any future sheriff would never be able to bring a motion to terminate? Absolutely not, Your Honor. The sheriff, even now, could raise a proper motion to terminate. For example, the sheriff's latest suggestion is that the temporary detention facilities could be used instead. That has already been rejected by the district court. But beside that, if the sheriff were to say, look, I have a more narrow suggestion, a less intrusive means for doing that, I'm going to move to terminate on that ground. If the sheriff were to say, look, we've corrected every constitutional violation, or not even every one. We've corrected some of the constitutional violations, and now phase three is unnecessary. The sheriff could move to terminate on that ground. Those would all be proper grounds for a motion to terminate. The sheriff is available to do that now. The next sheriff is available, is able to do that. There are, certainly, the sheriff could move to terminate on the proper grounds, and is free to do so at any time. There need not have been an appeal of the orders challenged to do that. It could be done at any time within the limits of the PLRA, but it must be done based on a proper ground that a motion to terminate is in place for. I'd like to just move on, if the court has no more questions about that particular issue, to the argument that the sheriff is not bound by the court's orders as a successor. The sheriff has clarified that this argument necessitates the first holding that this is a settlement agreement, and I want to kind of just go back over the factors that the sheriff cited Roe, a decision from, I believe, the 11th Circuit, over the factors that they enumerated to determine whether something was a settlement agreement or a consent order. They mentioned that something is entitled final order. In that case, that suggested that it was a consent order. It was signed so ordered. It contained court findings, and the court retained jurisdiction over it. Those were all flags that this was a court order in that case and not a private settlement agreement, and those factors are all, every single one, in effect with this particular order. Very importantly, this order, the stipulated order and the March 2019 order, contained need-narrowness intrusiveness findings subject to the PLRA. The PLRA is clear that a settlement agreement does not need to contain need-narrowness intrusiveness findings. Those are only necessary when it is a court order. No one in this case has ever believed this was a court order. It was clear for the stipulated order that it was a court order. The court retained jurisdiction. And I will mention that the language that the Sheriff's Counsel has suggested indicates it was a private settlement agreement is simply consistent. He used the word contract. The Supreme Court in RUFO emphasized that consent orders have elements of a contract and elements of an agreement, but that does not mean this was a private settlement agreement. The district court never once in 2019, in 2017, in deciding the 60B motion, or now, used the word private in describing these orders. Never once used the word private. This has always been a consent order. This has always been understood as a consent order. And as multiple circuit courts have recognized, when there is a consent order, it binds, and a public official is sued in their official capacity, the consent order binds successors to that public official. If the court has any further questions, I'd be happy to address them. Thank you, Ms. Becker. Thank you. Ms. Washington. May it please the court, Emily Washington for the plaintiff class. This court should find the Orleans pair of sheriff judicially estopped from arguing that the 2019 orders of the district court violate the PLRA. In addition to the reasons advanced by the United States, this appeal should be dismissed on grounds of estoppel and the order of the district court affirmed. The rule of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken and prevailed upon in the same or earlier proceeding. It's intended to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. Two main showings are necessary for a court to invoke judicial estoppel. First, the position of the party must be clearly inconsistent with its previous one. And second, the party must have convinced the court to accept its previous position. Both of these showings are easily satisfied here. First, in opposing the city of New Orleans rule 60 motion in the district court, including as to the city's contentions that the PLRA prohibited the district court from issuing the 2019 orders, the Orleans pair of sheriff advanced the following positions. First, that quote, neither of the 2019 orders violate any provisions of the PLRA. Second, that phase three is quote, the only durable long-term solution to the problem of inmates with medical and mental health needs. Third, that the district court had quote, the authority to enforce the city's agreement with the parties to build phase three. And fourth, that quote, nothing in the PLRA limits a court's authority to enforce its own orders or to require a party to fulfill its contractual agreements and promises. These very same arguments were also advanced to this court on appeal from the district court's denial of the city's rule 60 motion. These can be found at pages 26, 31 to 34 and 42 to 44 of the appellee's brief of Orleans pair of sheriff filed in July of 2021 in the first Anderson matter. These statements are clearly inconsistent with the sheriff's argument here that the orders of the district court violate the PLRA and are unenforceable. In making these... ...all of this, then the sheriff will never be able to bring any kind of a motion to modify it. Because all of that would have been stopped by the broad language that you just gave us. I think I disagree with that slightly, Your Honor. I do believe that the sheriff will always be stopped from making arguments that are contrary to the arguments made before regarding whether the 2019 orders violate the PLRA. But in terms of whether or not the sheriff can ever bring a motion to terminate or any kind of motion to modify, we agree with the United States. A procedurally proper motion to terminate is available to the sheriff now, will always be available, in which the sheriff can argue either that the underlying unconstitutional conditions have already been remedied or that something has changed such that the prospective relief which has been granted no longer meets the need, narrowness, intrusiveness test that's required by the PLRA for prospective relief. Have any of those arguments been made here? No, they have not been made in the district court and they have not been made to this court. Turning just briefly to the second requirement for invocation of judicial estoppel, the district court and this court were convinced to accept the previous positions of the Orleans Parish Sheriff. In denying the city's Rule 60 motion, the district court ruled consistent with the Orleans Sheriff's position, rejecting the city's arguments that the PLRA prohibited the district court from issuing the 2019 orders. And this court, in Anderson 1, in dismissing the city's appeal and affirming the denial of the Rule 60 motion, likewise found the city's PLRA arguments failed. So in terms of judicial estoppel, the Orleans Parish Sheriff has successfully argued that the district court had authority to enter the 2019 orders and that those orders were not violative of the PLRA. The sheriff should be judicially estopped from taking the opposite position now. Importantly, this inconsistent position would cause serious harm to the plaintiff class who will continue to be deprived of constitutional mental health care absent completion of the Phase 3 facility. This appeal can be dismissed as judicially estopped and the order of the district court affirmed. Unless the court has further questions, we would ask that the ruling of the district court be affirmed and I'm happy to yield the rest of my time back to the court. All right. Thank you, Ms. Washington. Mr. Torres for rebuttal. Your Honor, thank you very much. The United States in its argument took the position that the orders of the district court, the 2019 orders of the district court must be viewed as a consent decree and therefore they are enforceable against the sheriff. The problem with that argument is one, it obviously contradicts the district court's findings and holdings in denying the city's Rule 60B motion, but on top of that even if that were true that the court entered an order putting into effect or enforcing the party's agreement and therefore it's a consent decree because under 3626 C1 of the PLRA, a consent decree is an order entered by the court based upon the consent or acquiescence of the parties. The PLRA still provides quote, the court shall not enter or approve a consent decree unless it complies with the limitations on relief set forth in subsection a close quote. Those limitations include the language I quoted initially that a court may not order the parties to build a jail to resolve prison reform litigation and so even if the orders that are under consideration are treated as a consent decree contrary to what the district court held initially in denying the city's motion, then it still has to confront the limitations in subsection a and it can't get beyond those. What's the best case for the argument that a proper motion to terminate can be made by based on arguments that could have been brought to the you know, within a time period to appeal those orders directly as opposed to what your friends on the other side say and that is that there should be some showing of an alternative or that some of the issues that were discussed have been cured. Your Honor, I think those are two questions. Let me address the second one first. We've cited two cases that involve motions to terminate where there was an argument regarding the court's authority, the district court's authority to enter an order to build a jail. Those are the Huerta case and also Plata versus Schwarzenegger and in the Huerta case, the court recognized and said that both the court and all the parties believed that the only way to solve the prison's various problems was to build a new jail but the court could not enter that as an order. In the Plata case, the plaintiffs challenged the court's orders as violative of section 3626A1C because it ordered the parties to build a jail and the court denied that motion, not because it was improper. Was it also a stipulated order in that case? I believe so, Your Honor, but I'd have to double check that. But the issue was that the court had ordered the parties to make certain renovations and improvements to the jail and it was not a jail construction order. That was the reason that the court denied the motion, but it didn't find that the motion itself was improper. I think another point that's important with respect to the argument that there are only certain kinds of proper motions to terminate is that all of those factors that the United States and the plaintiff's class address need, narrowness, intrusiveness have already been determined by Congress. Congress has already determined that an order to build the jail may never satisfy those three conditions. It goes too far. And therefore, it's appropriate under 3626B, the provision regarding motion to terminate, to challenge an order that goes too far. And that's the purpose of the Sheriff's motion here. Whether the district court's underlying orders enforce the court's own order based on the party's consent or otherwise or whether the court is merely enforcing the party's own agreement, it lacks the authority to do that. I would just say that with respect to the judicial estoppel argument, that is an equitable doctrine. It requires a plainly inconsistent statement, and the prior Sheriff never took any positions with respect to the private settlement agreement statutes that we're relying upon for purposes of this motion. Thank you, Your Honor. We ask the Court to reverse. Thank you, Mr. Forrest. Both of today's cases are under submission, and the Court is in recess until 9 o'clock tomorrow. Thank you.